**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| Jessica Weise, Emily Boushie, and Matthew Bales, Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>Critical Mineral Recovery, Inc.; Interco Trading, Inc.<br><br>    Defendants. | CASE NO.: _____<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Jessica Weise, Emily Boushie, and Matthew Bales, individually and on behalf of putative classes of all others similarly situated ("Class Members" or "Class(es)"), sue Defendants Critical Mineral Recovery, Inc. and Interco Trading, Inc. and based on personal knowledge, investigation of counsel and review of public documents and information, allege as follows:

## INTRODUCTION

1. This Consolidated Class Action seeks redress for residents, property owners, employees and businesses living, working and/or located in and around the Critical Mineral Recovery facility located in Fredericktown, Missouri, a lithium-ion battery processing facility owned and operated by the Defendants which was the location of a large fire on October 30, 2024 that resulted in the release of a large cloud of smoke and possibly hazardous chemicals from the facility to the surrounding area, including the Plaintiff's residence. The fire at the Defendants' facility resulted in contamination of, and exposure to, massive amounts of smoke and potentially many hazardous chemicals, including hydrogen fluoride, hydrogen chloride, hydrogen cyanide,

1

carbon monoxide, sulfur dioxide and methane, which are all hazardous chemicals contained in lithium batteries. As a result of this release of smoke and potentially hazardous chemicals and the resulting evacuation and shelter-in-place orders for the surrounding area, Plaintiff and Class Members have all suffered, among other things, loss of use and enjoyment of property, property damage, potential exposure to toxic material, inconvenience, disruption and economic damages as alleged more specifically below.

## **THE PARTIES**

2.      At all relevant times, Plaintiff Jessica Weise is an adult citizen of Fredericktown, Missouri and is the owner-occupier of the real property located at 216 Village Creek Road, Fredericktown, Missouri, which is located less than a mile from Defendants' facility. As a result of the fire on October 30, 2024, Plaintiff was exposed to pervasive smoke and toxic chemicals and was evacuated from her home.

3.      At all relevant times, Plaintiff Emily Boushie is an adult resident citizen of Fredericktown, Missouri and is the owner-occupier of real property located at 1810 Madison 209, Fredericktown, Missouri. Plaintiff also owned a business within the area of the Defendants' facility that was evacuated on October 30, 2024, and also owned 2 Air BNB homes that were also evacuated. As a result of the fire on October 30, 2024, Plaintiff was also exposed to pervasive smoke and toxic chemicals and was evacuated from her home and business.

4.      At all relevant times, Plaintiff Matthew Bales is an adult resident citizen of Park Hills, Missouri and is the owner-occupier of real property located at 4812 Oak Ridge Trail, Park Hills, Missouri. Plaintiff was located less than a mile from the Defendants' facility at the time of the fire, and his residence was located in the area north of the facility that was permeated with the large cloud of smoke and hazardous chemicals from Defendants' facility. As a result of the fire on

October 30, 2024, Plaintiff was exposed to pervasive smoke and toxic chemicals.

5.　　As a result of Defendants' negligent, careless, reckless, and/or intentional conduct in connection with the October 30, 2024 fire, Plaintiff has suffered damages, including, but not limited to, past, present and future pain and suffering, an increased risk of future health complications from exposure to and inhalation of toxic chemicals, and contamination of her property by egregiously high and plainly dangerous levels of toxic chemicals and their byproducts dispersed by Defendants into the air, soil and water.

6.　　Plaintiffs seek to represent the Residents Class as defined below.

7.　　Defendant Critical Mineral Recovery, Inc. is a Missouri corporation with its principal place of business at 815 Highway OO, Fredericktown, Missouri 63645, and a registered service agent of CT Corporation System, 120 S. Central Avenue, Clayton, Missouri 63105. Upon information and belief, Critical Mineral Recovery, Inc. is a wholly owned subsidiary of Interco Trading, Inc.

8.　　Defendant Interco Trading, Inc. is a Missouri corporation with its principal place of business at 7 Gateway Commerce Center Drive West, Edwardsville, Illinois 62025, and a registered service agent of CT Corporation System, 120 S. Central Avenue, Clayton, Missouri 63105.

## JURISDICTION AND VENUE

9.　　This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff Class, on the one hand, and Defendant, on the other, are citizens of different states.

10.    This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants' contacts and actions within this district.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Missouri, and all Class Members were injured because of tortious activity in this District.

## FACTUAL ALLEGATIONS

*The Relationship Between Critical Mineral Recovery, Inc. and Interco Trading, Inc.*

12.    Critical Mineral Recovery, Inc. and Interco Trading, Inc. are jointly and severally liable for conduct alleged herein because they acted in concert and under alter ego and piercing the corporate veil theories, including based on the domination and /or control by Interco Trading, Inc.  and the interlocking and overlapping officers and directors.

*The October 30, 2024 Fire*

13.    Defendant Critical Mineral Recovery, Inc. operates one of the world's largest lithium-ion battery processing and recycling plants located just outside of Fredericktown, Missouri. Said facility is owned and operated by the Defendants.

14.    On October 30, 2024, a large fire broke out at the Defendants' Fredericktown facility, causing a large plume of smoke to fill the air that was visible for miles.  The smoke and whatever other potential hazardous chemicals contained in the cloud of smoke, were carried north of the facility by the winds, potentially affecting homes and businesses for miles north of the facility.





15.     As a result of the fire and pervasive smoke in the area, residents and business owners north and northwest of Village Creek Road and Madison 217 were evacuated immediately. Any other residents or businesses north of the fire were urged to shelter-in-place indoors and to close windows and doors and turn off any air conditioning.  All of Route 72 from the Highway OO bypass to Lincoln Drive was shut down to allow firetrucks to access Defendants' facility.  Over 25 local fire departments were needed to get the fire under control, and water was required to be trucked in from all over the county due to the lack of sufficient water at the facility.

16.     Lithium-ion batteries contain many hazardous chemicals, such as hydrogen fluoride, hydrogen chloride, hydrogen cyanide, carbon monoxide, sulfure dioxide and methane

17.     The dangers of carbon monoxide and hydrogen cyanide are well-known, including headaches, dizziness, confusion, loss of consciousness and possible asphyxiation.  Exposure to hydrogen fluoride and hydrogen chloride can result in skin burns and lung damage that can take hours to weeks to develop following exposure.  Hydrogen fluoride will be quickly absorbed by the body via skin and lungs depleting vital calcium and magnesium levels in tissues, which can result in severe and possibly fatal systemic effects.  Sulfur dioxide can cause severe skin burns and eye damage and is toxic if inhaled.

18.     Even several days after the fire, the smoke and haze from the reaction lingered over and permeated the surrounding areas, with no clear indication as to the extent of the chemical contamination and potential short-and-long-term health effects to those exposed to the hazardous chemicals.

## CLASS ALLEGATIONS

19.     Plaintiffs bring this consolidated action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and, as warranted, 23(c)(4) on behalf of themselves and the

following class of persons and organizations similarly situated for all direct, proximate, and foreseeable losses caused by the October 30, 2024 fire and resulting potential toxic chemical contamination. The proposed Classes, inclusive of subclasses, are hereby defined as follows:

1.    The Residents Class:

All individuals who resided within Missouri and who were subject to evacuation or shelter-in-place orders and potentially exposed to hazardous chemicals as a result of the fire at the Critical Mineral Recovery facility in Fredericktown, Missouri beginning on October 30, 2024.

2.    The Businesses Class:

All individuals or legal entities who owned, were employees of, or operated a business within Missouri whose businesses were closed or asked to shelter-in-place as a result of the fire at the Critical Mineral Recovery facility in Fredericktown, Missouri beginning on October 30, 2024.

20.    Excluded from the Class(es) are: (1) Defendants and any of their affiliates, parents or subsidiaries; all employees of Defendants; all persons who make a timely election to be excluded from the Class(es); and the judges assigned to this case, their immediate families, and court staff; and (2) insurers and insurance syndicates whose claims for damages regarding the October 30, 2024 fire, arise out of a right of subrogation, whether equitable, contractual or otherwise.

21.    Plaintiffs hereby reserve the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct additional investigation and discovery.

22.    The multiple Classes all involve identical factual issues and common, if not identical, legal issues.

23.    The proposed Class(es) meet(s) the criteria for certification under 23(a), 23(b)(2),

and/or 23(b)(3).

### Numerosity and Ascertainability:

24.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(l). The members of the Classes are so numerous and geographically dispersed that the joinder of all members is impractical.

25.     While the exact number of Class Members is unknown to Plaintiffs at this time, it is ascertainable; the proposed Classes include thousands of residents and businesses who were unlawfully exposed to toxic chemicals or who had property contaminated by unlawful exposure to toxic chemicals and suffered damages. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Predominance of Common Issues

26.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law or fact that predominate over questions affecting only individual Class Members.

27.     The common questions include, without limitation, the following:

a.      Whether Defendants' acts or omissions as set forth herein caused or contributed to the fire, subsequent release of toxic chemicals, contamination and evacuation and/or "shelter in place" orders;

b.      Whether Defendants are strictly liable for injuries and damages suffered by Plaintiffs and the Classes because Defendants engaged in abnormally dangerous and/or ultrahazardous activity by storing and utilizing hazardous substances;

c.      Whether Defendants created a nuisance by emitting air contaminants and/or

endangering the health, safety, or welfare of the public, causing unreasonable injury or damage to property;

d.      Whether Defendants created a nuisance by emitting air pollutants of hazardous materials in amounts greater than those set by applicable federal limits, thereby creating a public nuisance making them liable for the cost of abatement;

e.      Whether Defendants created a private nuisance through their acts and omissions, including by the release of toxic contaminants;

f.      Whether Defendants created a public nuisance through their acts and omissions, including by the release of toxic contaminants;

g.      Whether Defendants committed trespass on the property of Plaintiffs and the Classes by their acts and omissions, including by causing hazardous materials to enter and contaminate said property;

h.      Whether Defendants committed trespass to the chattels of Plaintiffs and the Classes through their acts and omissions, including by impairing the property as to its condition, quality, or value; depriving Plaintiffs and the Classes of the possession or use of their chattels for a substantial time; or causing harm to the property;

i.      Whether Defendants' acts and omissions after the release of chemicals caused or contributed to losses and damages sustained by Plaintiffs and the Classes;

j.      Whether the Plaintiffs and the Classes have suffered a loss of use and enjoyment of property, property damage, diminution of property value, extra expenses or other economic damages as a result of the Defendants' acts or omissions as set forth above;

k.      Whether Plaintiffs' and the Classes' businesses have suffered a loss of income and/or diminution in value due to either: (i) the release of toxic and hazardous substances or (ii)

the stigma associated with being within the evacuation and/or "shelter in place" zones;

l.      Whether Plaintiffs and the Classes have suffered damages to their businesses due to the chemical release and subsequent events, including forced closings and/or the evacuation;

m.      Whether Defendants' conduct constitutes gross negligence or willful and wanton conduct, including related to the chemical reaction and subsequent release of toxic and hazardous substances;

n.      Whether medical monitoring is an appropriate remedy that should be imposed to provide early detection of future injuries and other benefits to Plaintiffs and the Classes;

o.      Whether monitoring of the diminution in value of Plaintiffs, including the stigma, on the value of the property of Plaintiffs and the Classes is an appropriate remedy; and

p.      Whether Plaintiffs and the Classes are entitled to relief for the damages caused by Defendants.

28.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class Members and arise from the same course of conduct by Defendants.

29.      Plaintiffs' own property, reside in, work and/or operate a business within the Class Zone surrounding the fire and owned property, resided in, worked and/or operated a business in the Class Zone at all relevant times.

30.      Plaintiffs' claims are based upon the same legal theories as those of the other Class Members.

31.      Plaintiffs and the other Class Members sustained damages as a direct and proximate result of the same wrongful acts or omissions in which Defendants engaged.

32.      Plaintiffs' damages and injuries are akin to those of Class Members, and Plaintiffs

seek relief consistent with the relief of Class Members.

### Adequacy

33.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting complex class action and environmental toxic tort litigation, including successful class actions involving mass displacements caused by the release of dangerous substances that are similar to that at issue here.

34.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Class Members.

35.    Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of Class Members.

### Superiority and Predominance

36.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct predominate over any questions affecting only individual Class Members.

37.    Because the damages suffered by certain individual Class Members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class Members to redress the wrongs done to each of them individually, such that many Class Members would have no rational economic interest in individually controlling the prosecution of specific actions. Moreover, the burden imposed on the judicial system by individual litigation by even a small fraction of the Classes would be enormous, making class adjudication

the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

38.     The prosecution of this case as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

39.     Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority, discretion, and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## MEDICAL MONITORING CLASS INJUNCTIVE RELIEF PURSUANT TO RULE 23(b)(2)

40.     In addition, Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the Classes and that require court imposition of uniform relief, thereby making appropriate equitable relief to the Classes as a whole within the meaning of Rules 23(b)(2).

41.     Plaintiffs seek equitable relief in the form of a medical monitoring program and establishment of a medical monitoring fund, and further request injunctive relief compelling

Defendants to finance the medical monitoring program and address issues as they develop during program administration.

42.    As a direct and proximate result of Defendants' wrongful conduct as set forth above, Plaintiffs and the Class Members have actually been exposed, and will continue to be exposed, to toxic substances, toxic fumes and thereby suffer, and will continue to suffer a significantly increased risk of serious injury. This increased risk is such that a reasonable physician would order medical monitoring, including but not limited to periodic diagnostic medical testing and necessary examinations.

43.    Early detection and treatment of medical conditions that can result to exposure to toxic and hazardous chemicals is associated with more favorable outcomes. Timely-instituted medical monitoring will reduce the risk of illness and of more severe illness by using medical tests to detect who has been affected by exposure to toxic substances released by the Defendants, and to provide medical intervention that will prevent or reduce the deterioration and long-term health and well-being of Plaintiffs and the Classes they seek to represent. Medical monitoring and testing procedures, including clinical examinations, exist that make the early detection of exposure to those toxic substances that were released into the Class Zone as a result of the fire, as well as early detection of disease, both feasible and beneficial.

44.    The increased susceptibility to injuries and irreparable threat to the health of the Plaintiffs and the Class Members resulting from their exposure to toxic substances can be appropriately mitigated and addressed only by the creation of a comprehensive medical monitoring program, supervised by the Court, and funded by the Defendants, that: (a) notifies individuals who have been exposed to toxic substances of the potential harm from such exposure and the need for periodic testing and examination; (b) provides early detection and treatment of disease and injuries

13

caused by exposure to toxic substances; and (c) gathers and forwards to treating physicians information related to the diagnosis and treatment of injuries and diseases which may result from exposure to toxic substances.

45.     Establishment of a Court-supervised medical monitoring program can readily assure that the proceeds of any monitoring trust fund are reserved for the provision of and/or reimbursement for the above-referenced examination and testing procedures and related activities, guaranteeing the purely equitable use of any trust fund proceeds. The Court's use of its injunctive powers to oversee and direct medical monitoring in this case is an appropriate and necessary method of adjudication.

46.     The precise nature, form, extent and duration of Court-ordered diagnostic monitoring, clinical examinations, research activities, and education programs are a matter for the Court to decide, after hearing and consultation with medical, industrial, modeling, and other experts. Class adjudication of the right to this relief is both appropriate and necessary.

47.     The medical monitoring program should (a) be generally supervised by the Court and may be directly managed by Court-appointed, Court-supervised special masters or trustees; (b) involve the monitoring of all Class Members by designated physicians under a Court-approved medical treatment and research regiment; and (c) involve the collection of medical data utilized for group studies, as well as monitoring and treatment of individuals. During program administration, Defendants should address issues implicated by program administration as they develop.

## COUNT I
### NEGLIGENCE AND NEGLIGENCE PER SE
### (On Behalf of All Classes Against All Defendants)

48.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted

14

above as if fully set forth herein.

49.     The fire and uncontrolled release of toxic chemicals were caused by the negligence, carelessness and/or recklessness of the Defendants.

50.     Upon information and belief, Plaintiffs aver that the fire and release of toxic chemicals was caused by the joint negligence, carelessness and/or recklessness of the Defendants, and is the fault of the Defendants as set forth above.

51.     In addition, and in the alternative, the fire and release of toxic chemicals was caused by defective, unfit and/or unsafe equipment, which was in the care, custody and control of Defendants. Defendants knew or should have known of the dangerous, unfit and/or defective condition of this equipment and are therefore liable for them.

52.     Defendants owed Plaintiffs and the Classes a duty to use reasonable care in manufacturing, maintaining, controlling, and storing hazardous chemicals consistent with federal regulations and industry practices and procedures.  Defendants owed a duty to maintain, monitor, oversee and control its Fredericktown, Missouri facility to avoid fires and the potential release of harmful and toxic chemicals into the surrounding community. Some of these duties are the following:

a.      Adequately warn those in danger of imminent exposure to hazardous chemicals;

b.      Institute proper procedures and training for response to the mechanical malfunction of safety components in the Fredericktown, Missouri facility.

c.      Institute proper procedures and training for response to the release of hazardous materials;

d.      Institute proper procedures to avoid exposing hazardous materials to the environment;

e.      Have an emergency response plan to contain the spread of hazardous materials into the surrounding air, water, real property, and persons in the event of fire;

f.      Timely implement such an emergency response plan;

g.      Handle hazardous materials in a manner which would not cause Plaintiffs and Class Members harm, as Plaintiffs and Class Members were foreseeable victims located within the scope of the risk created by Defendants' conduct;

h.      Properly dispose of or otherwise eliminate the hazardous materials from the exposure site, including avoiding the use of techniques that would further expose Plaintiffs, Class Members, and surrounding areas to hazardous materials;

i.      Evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury;

j.      Timely evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury;

k.   Accurately make known the risk of catastrophic injury and illness from exposure to hazardous materials to persons at risk of exposure, including those outside the evacuation zone;

l.      Accurately make known the risk of exposure faced by those persons at risk of exposure, including those outside the evacuation zone; and

m.      Contain the spread of hazardous materials into the surrounding air, water, real property, and persons.

53.     However, inconsistent with federal regulations and industry practice and procedures, Defendants negligently, carelessly and/or recklessly breached their duties to Plaintiffs and the Classes by, among other things:

a.      Failing to properly inspect their facility;

16

b.      Failing to maintain vigilant lookout during the operation of its business;

c.      Failing to remedy defects in equipment that could result in fire and the release of hazardous chemicals;

d.      Failing to properly develop and implement risk reduction programs;

e.      Failing to properly develop and implement risk-based hazard management programs;

f.      Failing to properly develop and implement safety performance evaluation processes;

g.      Failing to operate, maintain, inspect and/or repair the Fredericktown, Missouri facility in such a way to ensure its safe and proper operation, particularly when storing and maintaining hazardous materials such as the chemicals found in lithium-ion batteries;

h.      Failing to adequately staff positions that plan, prepare, coordinate, and oversee the manufacture and storage of hazardous materials;

i.      Failing to adequately hire, train, manage, oversee, and supervise their agents, servants, and employees;

j.      Failing to properly determine the adequacy and skill of their agents, servants, and employees

k.      Failing to ensure that their agents, servants, and employees were properly and adequately instructed and trained in the storage and maintenance of hazardous materials;

l.      Failing to properly instruct and adequately train their agents, servants, employees, concerning safety and emergency procedures in the event of a fire and/or possible hazardous chemical release;

m.      Failing to adequately warn those in danger of exposure to hazardous chemicals;

17

n.      Failing to institute proper procedures to avoid exposing hazardous materials to the environment;

o.      Failing to have an emergency response plan to contain the spread of hazardous materials into the surrounding air, water, real property, and persons;

p.      Failing to timely implement such an emergency response plan;

q.      Failing to maintain, store and handle hazardous materials in a manner which would not cause Plaintiffs and the Class Members injury or harm, as Plaintiffs and the Class Members were foreseeable victims located within the scope of the risk created by Defendants' conduct.

r.      Failing to timely evacuate an appropriate geographical area to avoid exposing persons nearby to hazardous materials and causing injury;

s.      Accurately make known the risk of catastrophic injury and illness from exposure to hazardous materials to persons at risk of exposure, including those outside the evacuation zone;

t.      Accurately make known the risk of exposure faced by those persons at risk of exposure, including those outside the evacuation zone;

u.      Failing to contain the spread of hazardous materials and by-products, into the surrounding air, water, real property;

v.      Failing to otherwise reasonably maintain, dispose of, or otherwise handle hazardous materials,

w.      Otherwise unreasonably causing injury to Plaintiffs and the Class Members in ways further investigation and discovery will reveal.

54.    Defendants owed and breached a duty of reasonable care commensurate with the risk of storing and maintaining hazardous materials.

55.    Defendants owed and breached a duty of reasonable care commensurate with the

18

release and burning of those hazardous materials.

56.     The damages to Plaintiffs and Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions following the chemical release to mitigate the danger and harm associated with their operations.

57.     Plaintiffs are currently unadvised of the full extent of the federal or state safety laws and regulations that Defendants or their agents may have violated but reserve the right to rely on such safety laws and regulations shown during discovery. However, upon information and belief, Defendants' conduct violated one or more regulations, including but not limited to the Clean Water Act, Federal Resource Conservation and Recovery Act, and the Federal Comprehensive Environmental Response Compensation and Liability Act

58.     Defendants' violation of such safety laws and regulations constitutes negligence per se.

59.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class Members presently suffer, and will continue to suffer, past, present and future physical pain and suffering, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, loss of use and enjoyment, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

60.     Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

**COUNT II**
**STRICT LIABILITY**
**(On Behalf of All Classes Against All Defendants)**

61.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

62.     Defendants are strictly liable for the injuries and damages suffered by Plaintiffs and the Classes pursuant to the provisions of the Restatement (Second) of Torts § 519 and 520.

63.     The manufacture, use, and storage of hydrogen fluoride, hydrogen cyanide, carbon monoxide, sulfur dioxide and other toxic chemicals are an abnormally dangerous and/or ultrahazardous activity under the definition set forth in Restatement (Second) of Torts § 519 and 520.

64.     The Defendants engaged in an abnormally dangerous and/or ultrahazardous activity by manufacturing, storing, and using hazardous substances, in and around a residential community, making them strictly liable for any resulting damages.

65.     As a direct and proximate result of the Defendants' abnormally dangerous and/or ultrahazardous activity, Plaintiffs and Class Members presently suffer, and will continue to suffer, past, present and future physical pain and suffering, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

66.     Accordingly, the Defendants are strictly liable, jointly and severally, without regard to fault, for all of the damages to Plaintiffs and the Class Members, which were a direct and proximate result of the release of hazardous substances which harmed Plaintiffs, and the Classes

20

as described above.

67.    Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

<strong>COUNT III<br>PUBLIC NUISANCE<br>(On Behalf of All Classes)</strong>

68.    Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

69.    The noxious odors, pollutants, and air contaminants which entered Plaintiffs' and Class Members' property originated from the Fredericktown, Missouri facility owned, maintained, and/or operated by Defendants.

70.    The noxious odors, pollutants, and air contaminants emanating from Defendants' facility are a public nuisance by virtue of the facility's location near residential areas, the inadequacy of its abatement plan, as well as its influence on members of the public.

71.    The odors, pollutants, and air contaminants invading Plaintiffs' and Class Members' property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to significantly and unreasonably interfere with the comfortable enjoyment of life and/or property, including but not limited to the following ways:

a.    Causing Plaintiffs (and Class Members) to remain inside their home;

b.    Causing Plaintiffs (and Class Members) to keep doors and windows closed when weather conditions otherwise would not so require.

c.    Causing Plaintiffs (and Class Members) embarrassment and reluctance to invite

guests to their homes.

72.     Defendants, by failing to implement a sufficient odor abatement plan or otherwise failing to repair and maintain its facility to abate nuisances, has acted, and continues to act, in conscious disregard to public health, safety, peace, comfort, and/or convenience.

73.     Defendants' emission of odors, pollutants, and air contaminants is proscribed by law.

74.     The odors, pollutants, and air contaminants produced by Defendants' facility are continuous in nature and have a permanent and long-lasting effect.

75.     Defendants are aware of the odors, pollutants, and air contaminants that emanate from its Fredericktown, Missouri facility and have knowledge of the significant impact the odors have on residents' lives.

**COUNT IV**
**PRIVATE NUISANCE**
**(On Behalf of All Classes Against All Defendants)**

76.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

77.     At all times relevant hereto, Defendants knew or should have known that the hazardous chemicals found in lithium-ion batteries were hazardous and harmful to real property and human beings, and it was substantially certain that improper, handling, and disposal of these materials would cause injury to Plaintiffs and the Class Members and their property.

78.     Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated real property.

79.     Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have released hazardous chemicals onto Plaintiffs' and the Class Members' land

and have contaminated Plaintiffs' and the Class Members' real property, and persons.

80.   The Defendants' contamination of Plaintiffs' and the Class Members' property with hazardous chemicals has unreasonably interfered with the rights of Plaintiffs and the Class Members to use and enjoy their property, causing them to suffer injuries different in kind and degree from others in surrounding areas. Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs and the Class Members to refrain from occupying or using their real properties.

This has, in turn, caused significant loss of income, out of pocket expenses, loss of use and enjoyment and inconvenience.

81.   Defendants' conduct has also substantially interfered with Plaintiffs' and the Class Members' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that they so choose. It has also reduced the value of their land.

82.   Defendants' negligent, reckless and/or intentional acts and omissions were unreasonable and constitute invasion of the property rights of Plaintiffs and the Class Members.

83.   Plaintiffs and the Class Members, unlike the public generally, have suffered specific injuries as a result of Defendants' tortious, illegal, and wrongful conduct.

84.   Defendants' improper use, handling, and maintenance of hazardous chemicals and the contamination of Plaintiffs' and the Class Members' property resulting therefrom, constitutes a private nuisance. This nuisance has directly and proximately caused Plaintiffs and the Class Members to presently suffer, and continue suffering in the future, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation,

inconvenience, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

85.     Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

### COUNT V
### TRESPASS
### (On Behalf of Resident Classes Against All Defendants)

86.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

87.     At all times relevant hereto, Defendants knew or should have known chlorine, chloramine, and bromine to be hazardous and harmful to real property, animals, and human beings, and it was substantially certain that their use, emission, discharge, disposal, distribution, spreading and/or release of these hazardous materials would cause injury to Plaintiffs and Class Members and their property.

88.     Defendants, through their activities alleged herein, caused hazardous materials to enter and contaminate Plaintiffs' and the Class Members' property. They intentionally, knowingly, and negligently used, discharged, spread, deposited and/or released these hazardous materials knowing that those toxins would contaminate the real property of individuals like Plaintiffs and the Class Members.

89.     Defendants, through their activities alleged herein, authorized, requested, or caused others to handle, store, or use hazardous chemicals in a manner which they knew was substantially likely to cause hazardous materials to enter and contaminate Plaintiffs' and the Class Members'

properties. Through their actions, they intentionally, knowingly, and negligently caused hazardous materials to enter Plaintiffs' and the Class Members' land.

90.     At all relevant times Defendants were aware that their conduct in causing the release of hazardous chemicals into the surrounding atmosphere was contrary to Plaintiffs' and the Class Members' rights in their property.

91.     At all times, Defendants' conduct displayed indifference to and disregard for Plaintiffs' and the Class Members' rights to their property.

92.     Defendants, through their activities regarding hazardous materials alleged herein, failed to act in the manner of an ordinary, careful person or business.

93.     The Defendants' intentional, knowing, and negligent contamination, and continuing contamination, of Plaintiffs' and the Class Members' real and personal property with hazardous materials has interfered with the rights of Plaintiffs and the Class Members to use and enjoy their property and constitutes trespass and continuing trespass. Defendants' trespass has substantially impaired Plaintiffs' and the Class Members' rights in the use and enjoyment of their property as well as economic and property damages as alleged herein.

94.     Defendants' trespass has proximately caused, and will continue to cause, Plaintiffs and the Class Members real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, and inconvenience.

95.     Defendants' conduct as alleged herein shows that Defendants acted with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' and the Class Members' rights so as to warrant the imposition of punitive damages.

**COUNT VI**
**MEDICAL MONITORING**
**(On Behalf of All Classes Against All Defendants)**

96.     Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

97.     Plaintiffs and the Class Members have potentially been exposed to significant amounts of hazardous chemicals including hydrogen cyanide, carbon monoxide, hydrogen fluoride and sulfur dioxide.  These toxic substances have been proven to cause health complications in humans. Many of these complications do not manifest themselves for several weeks after exposure.

98.     The hazardous materials carried by and released by Defendants are highly toxic substances.

99.     Plaintiffs and the Classes were exposed to these toxic substances, as a direct and proximate result of Defendants' tortious actions, including Defendants' negligent, ultrahazardous, and willful and wanton conduct as alleged herein.

100.    As a proximate result of their exposure to these toxic substances, Plaintiffs and the Classes have a significantly increased risk of developing future health complications. This increased risk makes periodic diagnostic medical examinations reasonably necessary.

101.    This increased risk would warrant a reasonable physician to order monitoring.

102.    Early diagnosis of these health conditions has significant value for Plaintiffs and the Class Members because such diagnoses will help them monitor and minimize the harm therefrom.

103.    Monitoring procedures exist that make early detection of these health complications possible and beneficial. These monitoring procedures are different from those normally recommended in the absence of toxic exposures and are reasonably necessary as a direct and

proximate result of Plaintiffs' and the Class Members' exposures to the toxic substances, as a result of Defendants' actions as alleged herein.

104.    As a direct and proximate result of Plaintiffs' and the Class Members' exposure to the toxic substances, surveillance in the form of periodic medical examinations is reasonable and necessary, because such surveillance will provide early detection and diagnosis of harmful and debilitating injuries potentially resulting from exposure to the toxic substances, toxic fumes and carcinogens and, as a remedy for the conduct alleged.

105.    As a result, Plaintiffs and the Classes should be awarded the quantifiable costs of such a monitoring regime.

**COUNT VII**
**GROSS NEGLIGENCE/WILLFUL AND WANTON CONDUCT**
**(On Behalf of All Classes Against All Defendants)**

106.    Plaintiffs repeat, reallege, and incorporate by reference the allegations asserted above as if fully set forth herein.

107.    At all times relevant, Defendants owed a duty to refrain from grossly negligent, willful, wanton, reckless and outrageous conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and the Class Members.

108.    Upon information and belief, Defendants were, at all times relevant, aware that chlorine, chloramine, and bromine are highly toxic and/or otherwise harmful to humans.

109.    Upon information and belief, Defendants were, at all times relevant, aware of the considerable health risks associated with the release of the chemicals found in lithium-ion batteries into the air, water, and land, including the risk of causing various health complications in the surrounding population.

110.     Upon information and belief, Defendants were, at all times relevant, aware that their release of chemicals found in lithium-ion batteries could result in the unreasonably dangerous emission of hazardous materials into the surrounding communities.

111.     Notwithstanding this actual knowledge, and inconsistent with federal regulations and industry practice and procedures, Defendants breached their duties to the Plaintiffs and Class Members.

112.     Defendants' failures in these and other respects in the face of actual knowledge regarding the risks of unreasonable hazardous material discharge constitute gross negligence, willful, wanton, reckless and outrageous conduct, and demonstrates an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and the Class Members so as to warrant the imposition of punitive or exemplary damages.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members proposed in this Class Action Complaint, respectfully request that the Court enter judgment in their favor and against each Defendant as follows:

a.     An order certifying this action as a class action;

b.     An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial;

c.     An order enjoining Defendants' unlawful conduct;

d.     An award of attorney's fees, expert witness fees, costs, and Class representative awards as provided by law;

e.     An award of expenses of litigation pursuant due to Defendants' bad faith;

f.     An award of interest as provided by law, including pre-judgment and post-judgment

interest;

g.    Such other and further relief as this Court may deem just, equitable, or proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs demand a jury trial on all issues so triable.

Dated:  November 6, 2024

*/s/ James J Rosemergy*
James J Rosemergy
Carey Danis and Lowe
8235 Forsyth Boulevard, Suite 1100
St Louis, MO 63105
314-725-7700
Fax: 314-721-0905
Email: jrosemergy@careydanis.com


-AND-

Paul J. Doolittle, Esq.*
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: Paul.doolittle@poulinwilley.com
       cmad@poulinwilley.com


***ATTORNEY FOR THE PLAINTIFF***